# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| MARIO ALIANO,<br>and DUE FRATELLI, INC.,<br>individually, and on behalf of<br>all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2014 CH 16201 |
| FIFTH GENERATION, INC., | ) ) | |
| Defendant. | ) ) | Jury Trial Demanded |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs MARIO ALIANO ("Aliano") and DUE FRATELLI ("Due Fratelli") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their counsel at Zimmerman Law Offices, P.C., bring this action against Defendant FIFTH GENERATION, INC. ("Defendant"), as follows:

### NATURE OF THE CASE

1.      The craft distillery industry is experiencing a momentous surge. As of last year, there were more than 450 independent, craft distilleries in America, whereas a decade ago there were fewer than 40, according to the American Distilling Institute. This explosion has been fueled, in large part, by the growing interest in hand-crafted, artisan, and locally made products.

2.      Defendant owns the vodka known as Tito's Handmade Vodka ("Tito's"). Defendant's marketing and advertising portrays Tito's as a high-quality, low-volume alternative to mass produced liquors. Indeed, Tito's website claims the vodka is "made in small batches in an old fashioned pot still by [company founder] Tito Beveridge," in contrast to being made using more conventional, automated, commercial methods.

3.     On Tito's label, Defendant prominently displays the word "handmade" and goes on to say the vodka was "crafted in an old fashioned pot still." The ordinary usage of the "handmade" label describes a production process devoid of automation or machinery, and implies a higher level of quality as compared with other commercial production methods. Likewise, the assertion about Defendant's "old fashioned" production method implies a process entailing little to no machinery or automation.

4.     Defendant also makes similar representations on its website, going so far as to post photos and videos of the small, original still that was originally used to make Tito's. To maintain the façade, the website promises that the company's founder, Tito Beveridge, "ensures he will keep building more of his handmade pot stills to keep up" with demand.

5.     However, Defendant's marketing and advertising is intentionally false and misleading. Although Defendant may have begun producing Tito's in a small, handmade still, production has now shifted to large floor-to-ceiling stills capable of bottling 500 cases of vodka per hour.

6.     Thousands of consumers and businesses across the country have been injured by Defendant's deceptive marketing practices, including the Plaintiffs. They all have purchased Tito's and paid a premium for it in reliance on the Defendant's representations that it was of higher quality because the vodka was produced in small batches using little to no machinery or automation.

7.     Plaintiffs were not aware of the truth regarding the production process of Tito's.

8.     Plaintiffs, on their own behalf and on behalf of a class of similarly situated individuals and businesses, bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees.

9.    At this time, Plaintiffs do not seek a specific amount of damages, do not seek punitive damages, and do not seek damages (monetary and/or injunctive) and attorneys' fees that combined would meet or exceed $5,000,000, inclusive of costs and interest.

## PARTIES

10.    Plaintiff Mario Aliano is a natural person and citizen of the State of Illinois.

11.    Plaintiff Due Fratelli, Inc. is a corporation incorporated in and existing under the laws of the State of Illinois, with its principal place of business at 365 East Irving Park Road, Wood Dale, Illinois 60191.

12.    Defendant Fifth Generation, Inc., is a Texas corporation with its principal place of business located at 12101 Moore Road, Austin, Texas, 78719.  Defendant does business in the State of Illinois, Cook County, and nationwide.

## JURISDICTION AND VENUE

13.    Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), section 2-209(a)(7) (the making or performance of any contract or promise substantially connected with this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

14.    Venue is proper in this County pursuant to 735 ILCS 5/2-101, because this is the county in which the transaction, or some part thereof occurred, and Defendant is a corporation doing business in this County.  735 ILCS 5/2-102(a).

## SUBSTANTIVE ALLEGATIONS

15.     Defendant began commercial production of Tito's in 1997.

16.     At first, Tito's was made in a small, homemade, 16-gallon pot still warehoused in a small shack. As Defendant's company began growing, so too did the production facilities.

17.     Today, Defendant operates a 26-acre facility housing "massive buildings containing ten floor-to-ceiling stills."[1]  Unlike the original pot still setup, these stills are capable of producing Tito's without any human intervention.

18.     The large stills enable Defendant to produce Tito's using a continuous distillation process, capable of producing 500 cases of vodka each hour.

19.     Despite the evolution of its production techniques, Defendant has failed to change its marketing and advertising campaigns.  Further, Defendant intentionally misleads the public as to the true nature of the Tito's production process to maintain an advantage in the marketplace.

20.     Defendant makes numerous representations that the vodka is still made in the same or similar homemade pot stills as the original product.

21.     Defendant's deception begins at the name of its product, "Tito's Handmade Vodka."  In its normal and ordinary usage, "handmade" characterizes a product as "made by hand, not by machine, and typically therefore of superior quality."[2]

22.     Upon information and belief, Defendant persists in calling its vodka "handmade" even though production takes place in a continuous distillation process devoid of human intervention.  The label on a bottle of Tito's appears below:

---

[1] http://www.forbes.com/sites/meghancasserly/2013/06/26/haunted-spirits-the-troubling-success-of-titos-handmade-vodka/

[2] "Handmade." Oxford English Dictionary. 2014. OED Online. Oxford University Press. 10 October 2014. Available at: http://www.oxforddictionaries.com/us

4



23.     Tito's label goes on to claim that the vodka is "crafted in an old fashioned pot still." Similarly, Defendant's website claims Tito's is made in "small batches in an old fashioned pot still." A screenshot of the Defendant's website appears below. However, as previously alleged, Tito's is manufactured using a decidedly modern production process, encompassing large, automated stills with high-volume production capacity.



5

24.     During an interview for an article in Forbes magazine, Defendant made sure to steer a photographer away from the large, automated production facilities and "into the shack with the original still." Likewise, Defendant makes sure to include pictures of the original distillery building and homemade still on its "virtual distillery tour," yet omits any picture revealing the monstrosity that the distillery has become. Photographs of the original "shack" with the original pot still appear below:

 

25.     In a video on its website, Defendant's founder, Tito Beveridge, stands in front of the original still and claims the "handmade" distillery setup "produces some really fine liquor." He knowingly makes this misrepresentation even though the original setup is no longer used to make Tito's.

26.     Defendant also refers to itself as a "mircodistillery." Entities like the American Distilling Institute and the Distilled Spirits Council of the United States place the cutoff for the "microdistillery" label at about 25,000 to 40,000 cases per year. However, Defendant produces around 850,000 cases per year—roughly 30 times the maximum production capacity to be considered a "microdistillery."

6

27.     These misrepresentations are all designed to mislead consumers and businesses into believing Tito's is a low-volume, high-quality vodka brand.  Consumers and businesses consider the Defendant's "old-fashioned" and "handmade" production methods as testaments to its quality.  At the same time, consumers and businesses believe Tito's is relatively scarce due to the Defendant's misrepresentations that the vodka is produced in tiny facilities, and as a result of Defendant's omissions that the vodka is actually produced using a large, automated, continuous distillation process.  As a result, consumers and businesses are willing to pay, and do pay, premium prices for Tito's.

28.     Consumers and businesses, like Plaintiffs, have purchased Tito's because the quality of the production process and the rarity of the vodka are material factors in their willingness to pay a premium for a product.

29.     Defendant knows that consumers and businesses are willing to pay more for a high-quality, low-volume vodka brand, and Defendant knows that Plaintiffs and other consumers and businesses believe they are paying costs associated with a high-quality, small-scale production process when they purchase Tito's.

30.     However, consumers and businesses, including Plaintiffs and the Class, have paid that premium based on Defendant's deceptive marketing and advertising strategy.  Had they known that Defendant's misrepresentations regarding Tito's were false, they would have not have purchased Tito's.

31.     As a result, consumers and businesses (including the Plaintiff and the members of the Class) were and are deceived into paying premium prices for Tito's that they would not otherwise be willing to pay.  Accordingly, consumers and businesses, including the Plaintiffs and the Class members, have been harmed by Defendant's deceptive trade practices.

## FACTS RELATING TO PLAINTIFFS

32.     Plaintiff Aliano is the owner and president of Plaintiff Due Fratelli, which is a restaurant that serves alcohol. Aliano is responsible for choosing which brands of alcohol to purchase for Due Fratelli.

33.     In determining which brands of alcohol to purchase for Due Fratelli, Aliano researched and continues to research the details of the various brands of alcohol, including Tito's. Prior to purchasing Tito's in October, 2014, Aliano consulted internet websites, and product labels for various brands of vodka, including Tito's, and compared the representations in the marketing and advertising materials for each brand of vodka.

34.     Based on the research he conducted and the false and misleading representations made by Defendant as outlined above, in October, 2014 Aliano purchased Tito's on behalf of and for use by Due Fratelli, and Aliano also purchased a bottle of Tito's for his personal use.

35.     None of the marketing or advertising materials that Aliano saw prior to purchasing Tito's disclosed that Tito's is distilled in a large production facility with floor-to-ceiling stills, that it is not "small batch," or is not made by hand.

36.     Had Aliano known the truth about Tito's, he would not have purchased it for his personal use or for use by Due Fratelli. Similarly, had the Class members known the true facts they would not have purchased Tito's, either.

## CLASS ALLEGATIONS

37.     **Class Definition**: Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a Class of similarly situated individuals and businesses, defined as follows:

8

All persons and entities who purchased a bottle or bottles of Tito's.

> Subclass A: all Illinois consumers who purchased a bottle or bottles of Tito's.

> Subclass B: all Illinois businesses that purchased a bottle or bottles of Tito's for business purposes.

Excluded from the Class is: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

38.    **Numerosity**: The exact number of Class members is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and businesses due to Defendant's mass-production of Tito's. Class members can be easily identified through Defendant's records or by other means.

39.    **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

> a.    Whether Defendant misrepresented that Tito's is produced in "small batches;"

> b.    Whether Defendant misrepresented that Tito's is made by hand;

> c.    Whether Defendant misrepresented that Tito's is made in an old fashioned pot still;

> d.    Whether Defendant failed to disclose that Tito's is mass produced;

> e.    Whether Defendant's conduct violates the Texas Deceptive Trade Practices Act;

9

     f.      Whether Defendant's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act;

     g.      Whether Defendant's conduct violates the Illinois Uniform Deceptive Trade Practices Act;

     h.      Whether Defendant's conduct was fraudulent or misleading; and

     i.      Whether Defendant's conduct resulted in unjust enrichment to Defendant.

40.     **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

41.     **Appropriateness**: Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because the damages suffered by individual Class members are likely to be relatively small, especially given the burden and cost of individually conducting the complex litigation necessitated by Defendant's actions. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

## COUNT I
**Violation of the Texas Deceptive Trade Practices Act**
**(Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*)**
**(On behalf of Plaintiff Aliano and the Class)**

42. Plaintiff incorporates by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

43. The Texas Deceptive Trade Practices Act ("Texas DTPA") makes unlawful any "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

44. Tito's is a "good" as defined by Texas DTPA § 17.45 because it is a tangible chattel purchased for use.

45. Defendant is a "person" as defined under Texas DTPA § 17.45.

46. Plaintiff and each member of the Class are "consumers" as defined under Texas DTPA § 17.45.

47. Defendant engaged in false, misleading, or deceptive acts or practices in violation of Texas DTPA § 17.46(b)(5) when, in marketing and advertising Tito's, Defendant failed to give Plaintiff and members of the Class adequate notice regarding the mechanical mass production of the vodka despite the fact that Defendant knew or should have known that the vodka was not "handmade" nor produced in "small batches" in an "old fashioned pot still."

48. Defendant intended that Plaintiff and the members of the Class would rely upon Defendant's misrepresentations and failures to disclose the true nature of Tito's production. Defendant knew of the actual manufacturing process of Tito's and yet continued to sell, market, and distribute it to members of the Class while concealing the true production process of Tito's from them.

49. Defendant's acts and omissions possessed the tendency or capacity to mislead, and created the likelihood of deception.

11

50.    Defendant's actions, as set forth herein, were acts related to the advertisement and sale of consumer merchandise, and constitute unfair and deceptive trade practices in violation of Texas DTPA § 17.46(a).

51.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the members of the Class have suffered actual damages in the form of the full or partial retail price of Tito's.  Had Plaintiff and the Class known that Tito's was produced in mass-quantities in a mechanized process, they would not have purchased the vodka. As such, Plaintiff and members of the Class are entitled to recover actual damages and attorneys' fees pursuant to Texas DTPA § 17.50.

52.    The injuries to Plaintiff and the members of the Class were caused by Defendant's conduct in false and misleading advertising that originated in Texas, including the advertising and marketing materials described above.  All of the marketing, advertising, and promotional activities and literature were coordinated at, emanate from, and are developed at Defendant's Texas headquarters.  All critical decisions regarding Defendant's marketing and advertising were made in Texas.

53.    Furthermore, most of the misrepresentations and omissions alleged herein were contained on Defendant's website, which is maintained in Texas.

54.    When Plaintiff and the members of the Class purchased Tito's, those payments were processed and the money was sent to Defendant's headquarters in Texas.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Class defined herein;

B.      Designating Plaintiff as representative of the Class and his undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.      Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.      Awarding Plaintiff and the Class compensatory damages, in addition to reasonable attorney's fees and costs; and

F.      Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act**
**(815 ILCS § 505/1, *et seq.*)**
**(On behalf of Plaintiff Aliano and Subclass A)**

55.     Plaintiff incorporates by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

56.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, *et seq.*, provides protection to consumers by mandating fair competition in commercial markets for goods and services.

57.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

58.     The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

59.     Defendant is a "person" as defined by section 505/1(c) of the ICFA.

13

60. The Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA.

61. Tito's constitutes "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

62. Defendant's misrepresentation and omissions regarding the true manufacturing process of Tito's are deceptive and unfair acts or practices prohibited by Chapter 2 of ICFA.

63. Defendant violated the ICFA when it misrepresented and omitted facts regarding Tito's being "handmade" in "small batches" in an "old fashioned pot still" in order to create the impression upon consumers that Tito's was a unique, premium craft vodka.

64. Tito's material selling points are Defendant's misrepresentations that Tito's is a high-quality "handmade" vodka produced in "small batches" from an "old fashioned pot still," and Defendant's omission of the fact that the vodka is actually produced using a large, automated, continuous distillation process. Accordingly, it was the central reason consumers chose to purchase Tito's over other alternatives, and to pay a premium for it, and Defendant intended that customers rely on its misrepresentations and omissions.

65. Plaintiff and members of the Class relied upon Defendant's misrepresentations and omissions when they purchased bottles of Tito's.

66. If Plaintiff and the Class members had been aware of the true process used to produce Defendant's vodka, and the other facts set forth above, they would not have purchased Tito's.

67. As a result of Defendant's material misrepresentations and omissions regarding Tito's, Defendant violated section 510/2(a)(2) of the Uniform Deceptive Trade Practices Act ("DTPA") which proscribes causing a "likelihood of confusion or of misunderstanding as to the

source" of goods.

68.     Defendant also violated section 510/2(a)(5) of the DTPA by representing that Tito's has characteristics that it does not have, such as a being produced in low quantities and being made by hand in an old fashioned pot still.

69.     The Plaintiff's and Class's expectations that Tito's was not mass-produced vodka and was made by hand in an old fashioned pot still, were reasonable due to the Defendant's misrepresentations and omissions described herein.

70.     Plaintiff and the Class saw Defendant's marketing and advertising materials prior to purchasing Tito's, and they reasonably relied on Defendant's misrepresentations and omissions when they purchased Tito's.

71.     Defendant's misrepresentations and omissions regarding the manufacturing process of its vodka were acts likely to mislead the Plaintiff and the members of the Class acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of the ICFA.

72.     Defendant knew that it failed to disclose the quantity and manufacturing process of Tito's—which is highly relevant and material information—to its customers, and thus violated the ICFA.

73.     As a direct and proximate result of Defendant's violation of the ICFA, the Plaintiff and the members of the Class have suffered harm in the form of monies paid in exchange for Tito's, because they paid more than what they would have otherwise paid had they known the true nature of the product.

74.     Defendant's practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

75.     Plaintiff, on behalf of himself and the Class, seeks an order (1) requiring the Defendant to cease the deceptive and unfair practices described herein; (2) requiring Defendant to change its marketing and advertising materials, including Tito's labels and the Tito's website, to adequately disclose the material facts regarding the process of creating Tito's; (3) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (4) requiring Defendant to restore to Plaintiff and each Subclass member any money acquired by means of unfair competition (restitution).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class and his undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.     Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.     Awarding Plaintiff and the Class compensatory damages, in addition to reasonable attorney's fees and costs; and

F.     Granting all such further and other relief as the Court deems just and appropriate.

### COUNT III
**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**(815 ILCS 510/1, *et seq.*)**
**(On behalf of Plaintiff Due Fratelli and Subclass B)**

76.     Plaintiff incorporates by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

16

77.     At all times relevant hereto, there was in full force and effect the Illinois Uniform

Deceptive Practices Act, 815 ILCS 510/1, *et seq*. ("Illinois DTPA").

78.     Section 2 of the Illinois DTPA states in relevant part:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person:
>> ...
>> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>> ...
>> (4) uses deceptive representations or designations of geographic origin in connection with goods or services;
>> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have....;
>> ...
>> (9) advertises goods or services with intent not to sell them as advertised;
>> ...
>> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding
>
> 815 ILCS 510/2

79.     Defendant's foregoing misleading statements and omissions to Plaintiff and the

Class cause a likelihood of confusion and misunderstanding as to the manufacturing process of

Tito's.

80.     Defendant represents that Tito's has characteristics and ingredients that it does not

have, such as being of a small batch and that it is handmade in an old fashioned pot still.

81.     Defendant advertises Tito's with the intent not to sell it as advertised by using the

false and misleading advertising and marketing detailed above.

82.     The above-described deceptive and unfair acts and practices were used or

employed in the conduct of trade or commerce, namely, the sale of Tito's to Plaintiff and

members of the Class.

83.     The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

84.     Defendant's false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead Plaintiff and the Class.

85.     Accordingly, Defendant has violated the Illinois DTPA.

86.     Plaintiff was damaged, as if it does not purchase Tito's for its restaurant, it will suffer damages in the form of lost business from customers who want to drink Tito's.  However, if Plaintiff purchases Tito's and serves it to customers, Plaintiff will suffer damages in the form of lost business from customers who object to Plaintiff's sale of Tito's at a premium price when it is not a premium product.

87.     As such, Plaintiff is likely to be damaged in the future by Defendant's deceptive and unfair trade practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Class defined herein;

B.      Designating Plaintiff as representative of the Class and its undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.      Enjoining Defendant's illegal conduct alleged herein;

E.      Awarding Plaintiff and the Class reasonable attorney's fees and costs; and

F.      Granting all such further and other relief as the Court deems just and appropriate.

18

## COUNT IV
### Restitution/Unjust Enrichment
### (On behalf of Plaintiffs and the Class)

88.     Plaintiffs incorporate by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

89.     Defendant has acquired and retained money belonging to Plaintiffs and the Class as a result of its wrongful conduct: its false and misleading marketing and advertising campaign for Tito's. Each individual sale nets Defendant profit at the expense of the consumer.

90.     Defendant appreciates or knows of such a benefit.

91.     Under the principles of equity, Defendant should not be allowed to keep the money belonging to Plaintiffs and the members of the Class because Defendant has unjustly received it as a result of its unlawful actions described herein.

92.     Plaintiffs and the Class have suffered damages as a direct result of Defendant's conduct.

93.     Plaintiffs, on behalf of themselves and the Class, seek restitution for Defendant's unlawful conduct, as well as interest and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Class defined herein;

B.     Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiffs and the Class and against Defendant;

D.     Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

19

E.     Awarding Plaintiffs and the Class compensatory damages, in addition to their reasonable attorney's fees and costs; and

F.     Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Plaintiffs MARIO ALIANO and DUE FRATELLI, INC., individually, and on behalf of all others similarly situated,

By: _____
Thomas A. Zimmerman, Jr.
Adam M. Tamburelli
Frank J. Stretz
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
Firm I.D. No. 34418
www.attorneyzim.com

Counsel for the Plaintiffs and Putative Class

20

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

MARIO ALIANO and DUE FRATELLI, INC., )
individually, and on behalf of all others )
similarly situated, )
            )
         Plaintiffs, )
            )
        v. )   No. 2014 CH 16201
            )
FIFTH GENERATION, INC., )
            )
         Defendant. )

## PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

NOW COME Plaintiffs MARIO ALIANO and DUE FRATELLI, INC. (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, and, pursuant to 735 ILCS 5/2-801 of the Illinois Code of Civil Procedure, move this Court for an order certifying this action as a class action, as follows:

### I.    INTRODUCTION.

The Class on behalf of which Plaintiffs seek to maintain this action is defined as follows:

> All persons and entities who purchased a bottle or bottles of Tito's Handmade Vodka ("Tito's").

> Subclass A: all Illinois consumers who purchased a bottle or bottles of Tito's.

> Subclass B: all Illinois businesses that purchased a bottle or bottles of Tito's for business purposes.

Plaintiffs have filed a Class Action Complaint ("Complaint") in the Circuit Court of Cook County, Illinois against Defendant FIFTH GENERATION, INC., ("Defendant") due to Defendant's violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act

("ICFA"), Illinois Uniform Deceptive Trade Practices Act ("Illinois DTPA"), Texas Deceptive

Trade Practices Act ("Texas DTPA"), and unjust enrichment.

Plaintiffs incorporate by reference the allegations in their Complaint in support of this

motion.

## II.    LEGAL ARGUMENT.

### A.    Standard for Class Certification.

Class certification is governed by section 2-801 of the Illinois Code of Civil Procedure.

735 ILCS 5/2-801.  In order for an action to be maintained as a class action, the movant must

demonstrate that: (1) the Class is so numerous that joinder of all members is impracticable; (2)

there are questions of fact or law common to the Class that predominate over individual

questions; (3) the Class Representatives will fairly and adequately protect the interests of the

Class; and (4) the class action is an appropriate method for the fair and efficient adjudication of

the controversy.  *Id.*  As soon as practicable after the commencement of a class action, a Court

shall determine by order whether it may be so maintained and describe those whom the court

finds to be members of the Class.  735 ILCS 5/2-802(a).  The order may be conditional and may

be amended before a decision on the merits.  *Id.*

The decision to certify a purported Class is within the sound discretion of the trial court.

*McCabe v. Burgess*, 75 Ill.2d 457, 464 (1979); *A.G. Farms, Inc. v. American Premier*

*Underwriters, Inc.,* 296 Ill.App.3d 684, 695 (4th Dist. 1998); *see also Schlenz v. Castle*, 84 Ill.2d

196, 203 (1981) (holding that certification by trial court will only be disturbed if there is an

abuse of discretion or impermissible application of legal standard).  When deciding whether to

certify a Class, the Court may consider "any matters of law or fact properly presented by the

record including the pleadings, depositions, affidavits, answers to interrogatories and any

evidence that may be adduced at hearings." *Gorden v. Boden*, 224 Ill.App.3d 195, 199 (1st Dist. 1991), quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill.App.3d 84, 100 (5th Dist. 1985); *Brown v. Murphy*, 278 Ill.App.3d 981, 989 (1st Dist. 1996).

A class action is an appropriate method of disposing of a number of relatively small claims. *See Miner v. Gillette Co.*, 87 Ill.2d 7, 8-9 (1981) (reasoning that purpose of class action is to allow a representative party to pursue claims of a large number of persons with like claims). Class actions are an essential and well-accepted way for courts to protect consumers. "In a large and impersonal society, class actions are often the last barricade of consumer protection. Generally, individual plaintiffs cannot, will not and ought not be required to pursue what would often be trivial relief." *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 1004 (1st Dist. 1991). A class action is "an inviting procedural device to cope with frauds causing small damages to large groups.... The alternatives to the class action—private suits or governmental action—have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective." *Id.* (citing omitted).

**B.      Joinder of All Members of the Purported Class Would Be Impracticable.**

Section 2-801(1) of the Code of Civil Procedure, the so called "numerosity requirement," necessitates that the Class be "so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). Very few Illinois cases specifically address the numerosity requirement, but Illinois courts construing the section may follow federal practice under Rule 23(a)(1) (Fed. R. Civ. P. 23(a)(1)) for guidance. *In re Application of Rosewell*, 236 Ill.App.3d 165, 173-74 (1st Dist. 1992), relying on Forde, *State Practice: Illinois Class Action Statute,* in Class Actions ch. 7, § 7.6 (Ill. Inst. for Cont. Legal Educ. (1986)). Purported numbers are not dispositive; rather, the question of numerosity depends upon the particular facts of each case. *Id.*

3

Federal courts have not established a bright line or a minimum number of members to create a Class. *Wood River Area Development Corp. v. Germania Fed. Savings and Loan Ass'n*, 198 Ill.App.3d 445, 450 (5th Dist. 1990). If, however, a putative Class has more than forty people in it, then numerosity is satisfied. *Id.*, *citing* Miller, *An Overview of Federal Class Actions: Past, Present, and Future,* Federal Judicial Center, at 22 (1977); *see also Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (holding 40 members sufficient for class certification); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986) (reasoning where Class numbers at least 40, joinder is generally considered impracticable).

The Court has the ability to make common sense assumptions to find support for numerosity. *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988); *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination…. Where the exact size of the Class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), § 7.22.A.

The fact that Plaintiffs cannot state with specificity the exact number of purported Class members at this time does not defeat the existence of sufficient numerosity, because it is not necessary that Plaintiffs know the precise number of Class members at the outset of the case. Indeed, "Plaintiffs are not required to specify the exact number of Class members so long as a good faith estimate is provided." *McKenzie v. City of Chicago,* 175 F.R.D. 280, 285 (N.D. Ill. 1997), *citing Long v. Thornton Township High School Dist. 205,* 82 F.R.D. 186, 189 (N.D. Ill. 1979). *See Miner,* 87 Ill.2d at 18 (rejecting defendant's arguments on basis that individuals with

4

potential claims are readily identifiable by examination of defendant's files); *see also In re Rosewell*, 236 Ill.App.3d at 173-73 (affirming trial court's conclusion that joinder of potential Class members was practical because of inherent ease of identifying affected taxpayers in addition to geographic location and size of claims).

Here, 735 ILCS 5/2-801(1) is satisfied, as the Class is so numerous that joinder of all members is impractical. Plaintiffs have alleged that the Class likely consists of thousands of individuals and businesses, and that the Class members can easily be identified through Defendant's records or by other means. *See* Complaint, ¶ 38.

**C. Questions of Law and Fact Common to the Putative Class Predominate Over Any Questions Affecting Only Individual Members.**

Section 2-801(2) requires Plaintiffs to demonstrate that there are questions of law or fact common to the Class that predominate over any questions affecting only individual members. 735 ILCS 5/2-801(2). Illinois has been hospitable to the maintenance of class actions and has been willing to recognize that common questions of law and fact predominate in numerous situations. *Eshaghi*, 214 Ill.App.3d at 1002. As long as there are questions of fact or law common to the Class and these predominate over any other questions affecting only individual members of the Class, then the commonality requirement is satisfied. *Slimack v. Country Life Ins. Co.*, 227 Ill.App.3d 287, 292 (5th Dist. 1992), relying on *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 337-38 (1977); *see also Wenthold v. AT&T Technologies, Inc.*, 142 Ill.App.3d 612, 618 (1st Dist. 1986) (affirming circuit court finding of at least five or six common issues of law or fact). Satisfaction of the requirement pertaining to predominating common questions of fact or law requires a showing that successful adjudication of the purported Class Representatives' individual claims will establish a right of recovery in other Class members. *Scott v. Ambassador Insurance Co.*, 100 Ill.App.3d 184, 187 (1st Dist. 1981).

5

Once the basic determination has been made that a predominating common question of fact or law exists, the fact that there may also be individual questions will not defeat the predominating common question. *Miner*, 87 Ill.2d at 19. A multitude of state cases reveals that Illinois does not require Class members to have exact and duplicate causes of action to be included as members of a purported Class. *Eshaghi*, 214 Ill.App.3d at 1004. In fact, Class members may have significant differences in their claims, and commonality can still be found. *Id.* Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all Class members. *Miner,* 87 Ill.2d at 17-18; *Kennedy v. Commercial Carriers, Inc.* 294 Ill.App.3d 34, 39 (1st Dist. 1997). Where situations requiring individual determinations exist, however, the Court has authority to establish subclasses with each subclass being treated as a Class under 735 ILCS 5/2-802(b). *Purcell & Wardrobe Chartered v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988); *Wenthold,* 142 Ill.App.3d at 619; *Eshaghi,* 214 Ill.App.3d at 1004; *Steinberg*, 69 Ill.2d at 342.

In this case, there are questions of law and fact common to the Class which predominate over any questions affecting only individual members, in satisfaction of 735 ILCS 5/2-801(2). *See* Complaint, ¶ 39. These questions include, but are not limited to, the following:

    a.    Whether Defendant misrepresented that Tito's is produced in "small batches;"

    b.    Whether Defendant misrepresented that Tito's is made by hand;

    c.    Whether Defendant misrepresented that Tito's is made in an old fashioned pot still;

    d.    Whether Defendant failed to disclose that Tito's is mass produced;

    e.    Whether Defendant's conduct violates the Texas Deceptive Trade Practices Act;

f.      Whether Defendant's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act;

g.      Whether Defendant's conduct violates the Illinois Uniform Deceptive Trade Practices Act;

h.      Whether Defendant's conduct was fraudulent or misleading; and

i.      Whether Defendant's conduct resulted in unjust enrichment to Defendant.

The questions of law and fact are independent of any individual damage questions for Plaintiffs and each Class member.

**D.      The Proposed Class Representatives Will Fairly and Adequately Represent the Interests of the Class.**

Certification requires a showing that the proposed Class Representatives will fairly and adequately represent the interests of the Class. 735 ILCS 5/2-801(3). Absentee Class members must be so represented that their rights will receive adequate protection. *Steinberg*, 69 Ill.2d at 338. The test applied to determine the adequacy of representation is whether the interests of those who are parties are the same as those who are not joined, and whether the litigating parties fairly represent those not joined. *Newberry Library v. Board of Education*, 387 Ill. 85, 90 (1944); *Miner*, 87 Ill.2d at 14. Additionally, a Class Representative's attorney "must be qualified, experienced and generally able to conduct the proposed litigation." *Steinberg*, 69 Ill.2d at 338-39. Finally, the Class Representative's interest must not appear collusive. *Id.*

The claims of Plaintiffs are typical of the claims of the Class. Plaintiff Aliano, an Illinois resident, purchased Tito's for himself, and separately for and on behalf of his business, Plaintiff Due Fratelli. *See* Complaint, ¶¶ 32-34. Defendant represents Tito' is "handmade" in "small batches in an old fashioned pot still." *See* Complaint, ¶¶ 2-3. In fact, Tito's is mass produced in large floor-to-ceiling stills capable of bottling 500 cases of vodka per hour. *See* Complaint, ¶ 5.

7

Had Plaintiffs and the Class been aware of the Defendant's misrepresentations and omissions, they would not have purchased Tito's. *See* Complaint, ¶ 36.

Plaintiffs and all members of the Class sustained damages. *See* Complaint, ¶ 31. The financial losses of each member of the Class were directly caused by Defendant's misconduct.

Plaintiffs will fairly and adequately protect the interest of the Class, as they are committed to the vigorous prosecution of this action and have retained competent, qualified and experienced counsel able to prosecute the action on behalf of the Class. *See* Complaint, ¶ 40.

**E.    A Class Action Is an Appropriate Method for the Fair and Efficient Adjudication of the Instant Action.**

Section 5/2-801(4) requires that the class action be "an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). In making this determination, a Court must consider whether a class action "(1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill.App.3d at 203; *see also McCabe*, 75 Ill.2d at 468 (holding that federal construction as it relates to economies to be affected through use of class actions should be applied by Illinois courts).

In this case, the class action is an appropriate method for the fair and efficient adjudication of the claims involved, and satisfies 735 ILCS 5/2-801(4). *See* Complaint, ¶ 41. A class action certified by the Circuit Court of Cook County will result in the fair and efficient adjudication of the controversy between the parties based on the identity of issues and common questions, as well as avoiding the filing of numerous repeated and similar individual and class actions.

Moreover, there is no better method than a class action for the adjudication of the relatively small claims that might be bought by each individual Class member. The difficulties sometimes encountered in the management of a class action in the present case are minimal. Each Class member's damages arise from the same identical set of facts and circumstances, to wit: Defendant's violation of the ICFA, Illinois DTPA, Texas DTPA, and Defendant's unjust enrichment at the expense of the Class. The liability issues are identical with regard to each Class member.

The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, which would establish inconsistent adjudications with respect to individual members of the Class. These inconsistent adjudications would, as a practical matter, be dispositive of the other members not parties to the adjudications or which would substantially impair or impede their ability to protect their interests.

## III.    CONCLUSION.

The Court should certify the Class, as there is no better method available for the adjudication of the claims of Plaintiffs and the Class. Defendant's wrongdoing was identical with respect to each of the Class members.

Furthermore, the filing of numerous cases against Defendant would be unduly burdensome to the Courts. Judicial efficiency would be greatly promoted by the adjudication of identical claims through a single proceeding.

Therefore, from the perspective of the Court system and the Class members, a class action is a superior means of resolving the issues regarding Defendant's misconduct, especially when compared to individual actions, due to the relatively small amount of damages suffered by each Class member. Allowing this case to proceed as a class action will be an efficient use of

judicial resources and will be superior to individual lawsuits, especially considering the fact that

the size of Defendant's business indicates that there is a large number of potential individual

plaintiffs.

WHEREFORE, Plaintiffs MARIO ALIANO and DUE FRATELLI, INC., individually,

and on behalf of all others similarly situated, pray that the Court enter an order that this action as

described may be maintained as a class action pursuant to 735 ILCS 5/2-801, that the Plaintiffs

be appointed as the Class Representatives, that Plaintiffs' counsel be designated as Class

counsel, that the Court certify the Class as defined above, and for any other relief the Court

deems appropriate.

Plaintiffs MARIO ALIANO and DUE FRATELLI,
INC., individually, and on behalf of all others
similarly situated,

By: _____

Thomas A. Zimmerman, Jr.
Adam M. Tamburelli
Frank J. Stretz
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
Firm I.D. No. 34418
www.attorneyzim.com

Counsel for the Plaintiffs and Putative Class

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| MARIO ALIANO,<br>and DUE FRATELLI, INC.,<br>individually, and on behalf of<br>all others similarly situated, | )<br>)<br>)<br>)<br>) | 2014CH16201<br>CALENDAR/ROOM 11<br>TIME 00:00<br>Class Action |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | No. |
| FIFTH DIMENSION, INC., | )<br>)<br>) | |
| Defendant. | ) | Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiffs MARIO ALIANO ("Aliano") and DUE FRATELLI ("Due Fratelli") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their counsel at Zimmerman Law Offices, P.C., bring this action against Defendant FIFTH DIMENSION, INC. ("Defendant"), as follows:

### NATURE OF THE CASE

1.     The craft distillery industry is experiencing a momentous surge.  As of last year, there were more than 450 independent, craft distilleries in America, whereas a decade ago there were fewer than 40, according to the American Distilling Institute.  This explosion has been fueled, in large part, by the growing interest in hand-crafted, artisan, and locally made products.

2.     Defendant owns the vodka known as Tito's Handmade Vodka ("Tito's").  Defendant's marketing and advertising portrays Tito's as a high-quality, low-volume alternative to mass produced liquors.  Indeed, Tito's website claims the vodka is "made in small batches in an old fashioned pot still by [company founder] Tito Beveridge," in contrast to being made using more conventional, automated, commercial methods.

3.     On Tito's label, Defendant prominently displays the word "handmade" and goes on to say the vodka was "crafted in an old fashioned pot still." The ordinary usage of the "handmade" label describes a production process devoid of automation or machinery, and implies a higher level of quality as compared with other commercial production methods. Likewise, the assertion about Defendant's "old fashioned" production method implies a process entailing little to no machinery or automation.

4.     Defendant also makes similar representations on its website, going so far as to post photos and videos of the small, original still that was originally used to make Tito's. To maintain the façade, the website promises that the company's founder, Tito Beveridge, "ensures he will keep building more of his handmade pot stills to keep up" with demand.

5.     However, Defendant's marketing and advertising is intentionally false and misleading. Although Defendant may have begun producing Tito's in a small, handmade still, production has now shifted to large floor-to-ceiling stills capable of bottling 500 cases of vodka per hour.

6.     Thousands of consumers and businesses across the country have been injured by Defendant's deceptive marketing practices, including the Plaintiffs. They all have purchased Tito's and paid a premium for it in reliance on the Defendant's representations that it was of higher quality because the vodka was produced in small batches using little to no machinery or automation.

7.     Plaintiffs were not aware of the truth regarding the production process of Tito's.

8.     Plaintiffs, on their own behalf and on behalf of a class of similarly situated individuals and businesses, bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees.

9.     At this time, Plaintiffs do not seek a specific amount of damages, do not seek punitive damages, and do not seek damages (monetary and/or injunctive) and attorneys' fees that combined would meet or exceed $5,000,000, inclusive of costs and interest.

## PARTIES

10.     Plaintiff Mario Aliano is a natural person and citizen of the State of Illinois.

11.     Plaintiff Due Fratelli, Inc. is a corporation incorporated in and existing under the laws of the State of Illinois, with its principal place of business at 365 East Irving Park Road, Wood Dale, Illinois 60191.

12.     Defendant Fifth Generation, Inc., is a Texas corporation with its principal place of business located at 12101 Moore Road, Austin, Texas, 78719. Defendant does business in the State of Illinois, Cook County, and nationwide.

## JURISDICTION AND VENUE

13.     Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), section 2-209(a)(7) (the making or performance of any contract or promise substantially connected with this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

14.     Venue is proper in this County pursuant to 735 ILCS 5/2-101, because this is the county in which the transaction, or some part thereof occurred, and Defendant is a corporation doing business in this County. 735 ILCS 5/2-102(a).

3

## SUBSTANTIVE ALLEGATIONS

15.     Defendant began commercial production of Tito's in 1997.

16.     At first, Tito's was made in a small, homemade, 16-gallon pot still warehoused in a small shack. As Defendant's company began growing, so too did the production facilities.

17.     Today, Defendant operates a 26-acre facility housing "massive buildings containing ten floor-to-ceiling stills."[1] Unlike the original pot still setup, these stills are capable of producing Tito's without any human intervention.

18.     The large stills enable Defendant to produce Tito's using a continuous distillation process, capable of producing 500 cases of vodka each hour.

19.     Despite the evolution of its production techniques, Defendant has failed to change its marketing and advertising campaigns. Further, Defendant intentionally misleads the public as to the true nature of the Tito's production process to maintain an advantage in the marketplace.

20.     Defendant makes numerous representations that the vodka is still made in the same or similar homemade pot stills as the original product.

21.     Defendant's deception begins at the name of its product, "Tito's Handmade Vodka." In its normal and ordinary usage, "handmade" characterizes a product as "made by hand, not by machine, and typically therefore of superior quality."[2]

22.     Upon information and belief, Defendant persists in calling its vodka "handmade" even though production takes place in a continuous distillation process devoid of human intervention. The label on a bottle of Tito's appears below:

---

[1] http://www.forbes.com/sites/meghancasserly/2013/06/26/haunted-spirits-the-troubling-success-of-titos-handmade-vodka/
[2] "Handmade." Oxford English Dictionary. 2014. OED Online. Oxford University Press. 10 October 2014. Available at: http://www.oxforddictionaries.com/us



23.     Tito's label goes on to claim that the vodka is "crafted in an old fashioned pot still." Similarly, Defendant's website claims Tito's is made in "small batches in an old fashioned pot still." A screenshot of the Defendant's website appears below. However, as previously alleged, Tito's is manufactured using a decidedly modern production process, encompassing large, automated stills with high-volume production capacity.



24.     During an interview for an article in Forbes magazine, Defendant made sure to steer a photographer away from the large, automated production facilities and "into the shack with the original still." Likewise, Defendant makes sure to include pictures of the original distillery building and homemade still on its "virtual distillery tour," yet omits any picture revealing the monstrosity that the distillery has become. Photographs of the original "shack" with the original pot still appear below:

 

25.     In a video on its website, Defendant's founder, Tito Beveridge, stands in front of the original still and claims the "handmade" distillery setup "produces some really fine liquor." He knowingly makes this misrepresentation even though the original setup is no longer used to make Tito's.

26.     Defendant also refers to itself as a "mircodistillery." Entities like the American Distilling Institute and the Distilled Spirits Council of the United States place the cutoff for the "microdistillery" label at about 25,000 to 40,000 cases per year. However, Defendant produces around 850,000 cases per year—roughly 30 times the maximum production capacity to be considered a "microdistillery."

6

27.     These misrepresentations are all designed to mislead consumers and businesses into believing Tito's is a low-volume, high-quality vodka brand.  Consumers and businesses consider the Defendant's "old-fashioned" and "handmade" production methods as testaments to its quality.  At the same time, consumers and businesses believe Tito's is relatively scarce due to the Defendant's misrepresentations that the vodka is produced in tiny facilities, and as a result of Defendant's omissions that the vodka is actually produced using a large, automated, continuous distillation process.  As a result, consumers and businesses are willing to pay, and do pay, premium prices for Tito's.

28.     Consumers and businesses, like Plaintiffs, have purchased Tito's because the quality of the production process and the rarity of the vodka are material factors in their willingness to pay a premium for a product.

29.     Defendant knows that consumers and businesses are willing to pay more for a high-quality, low-volume vodka brand, and Defendant knows that Plaintiffs and other consumers and businesses believe they are paying costs associated with a high-quality, small-scale production process when they purchase Tito's.

30.     However, consumers and businesses, including Plaintiffs and the Class, have paid that premium based on Defendant's deceptive marketing and advertising strategy.  Had they known that Defendant's misrepresentations regarding Tito's were false, they would have not have purchased Tito's.

31.     As a result, consumers and businesses (including the Plaintiff and the members of the Class) were and are deceived into paying premium prices for Tito's that they would not otherwise be willing to pay.  Accordingly, consumers and businesses, including the Plaintiffs and the Class members, have been harmed by Defendant's deceptive trade practices.

## FACTS RELATING TO PLAINTIFFS

32.     Plaintiff Aliano is the owner and president of Plaintiff Due Fratelli, which is a restaurant that serves alcohol. Aliano is responsible for choosing which brands of alcohol to purchase for Due Fratelli.

33.     In determining which brands of alcohol to purchase for Due Fratelli, Aliano researched and continues to research the details of the various brands of alcohol, including Tito's. Prior to purchasing Tito's in October, 2014, Aliano consulted internet websites, and product labels for various brands of vodka, including Tito's, and compared the representations in the marketing and advertising materials for each brand of vodka.

34.     Based on the research he conducted and the false and misleading representations made by Defendant as outlined above, in October, 2014 Aliano purchased Tito's on behalf of and for use by Due Fratelli, and Aliano also purchased a bottle of Tito's for his personal use.

35.     None of the marketing or advertising materials that Aliano saw prior to purchasing Tito's disclosed that Tito's is distilled in a large production facility with floor-to-ceiling stills, that it is not "small batch," or is not made by hand.

36.     Had Aliano known the truth about Tito's, he would not have purchased it for his personal use or for use by Due Fratelli. Similarly, had the Class members known the true facts they would not have purchased Tito's, either.

## CLASS ALLEGATIONS

37.     **Class Definition**: Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a Class of similarly situated individuals and businesses, defined as follows:

8

All persons and entities who purchased a bottle or bottles of Tito's.

> Subclass A: all Illinois consumers who purchased a bottle or bottles of Tito's.

> Subclass B: all Illinois businesses that purchased a bottle or bottles of Tito's for business purposes.

Excluded from the Class is: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

38. **Numerosity:** The exact number of Class members is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and businesses due to Defendant's mass-production of Tito's. Class members can be easily identified through Defendant's records or by other means.

39. **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

> a. Whether Defendant misrepresented that Tito's is produced in "small batches;"

> b. Whether Defendant misrepresented that Tito's is made by hand;

> c. Whether Defendant misrepresented that Tito's is made in an old fashioned pot still;

> d. Whether Defendant failed to disclose that Tito's is mass produced;

> e. Whether Defendant's conduct violates the Texas Deceptive Trade Practices Act;

9

f.     Whether Defendant's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act;

g.     Whether Defendant's conduct violates the Illinois Uniform Deceptive Trade Practices Act;

h.     Whether Defendant's conduct was fraudulent or misleading; and

i.     Whether Defendant's conduct resulted in unjust enrichment to Defendant.

40.    **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

41.    **Appropriateness**: Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because the damages suffered by individual Class members are likely to be relatively small, especially given the burden and cost of individually conducting the complex litigation necessitated by Defendant's actions. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

<u>COUNT I</u>
**Violation of the Texas Deceptive Trade Practices Act**
**(Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*)**
**(On behalf of Plaintiff Aliano and the Class)**

42.     Plaintiff incorporates by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

43.     The Texas Deceptive Trade Practices Act ("Texas DTPA") makes unlawful any "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

44.     Tito's is a "good" as defined by Texas DTPA § 17.45 because it is a tangible chattel purchased for use.

45.     Defendant is a "person" as defined under Texas DTPA § 17.45.

46.     Plaintiff and each member of the Class are "consumers" as defined under Texas DTPA § 17.45.

47.     Defendant engaged in false, misleading, or deceptive acts or practices in violation of Texas DTPA § 17.46(b)(5) when, in marketing and advertising Tito's, Defendant failed to give Plaintiff and members of the Class adequate notice regarding the mechanical mass production of the vodka despite the fact that Defendant knew or should have known that the vodka was not "handmade" nor produced in "small batches" in an "old fashioned pot still."

48.     Defendant intended that Plaintiff and the members of the Class would rely upon Defendant's misrepresentations and failures to disclose the true nature of Tito's production. Defendant knew of the actual manufacturing process of Tito's and yet continued to sell, market, and distribute it to members of the Class while concealing the true production process of Tito's from them.

49.     Defendant's acts and omissions possessed the tendency or capacity to mislead, and created the likelihood of deception.

11

50.     Defendant's actions, as set forth herein, were acts related to the advertisement and sale of consumer merchandise, and constitute unfair and deceptive trade practices in violation of Texas DTPA § 17.46(a).

51.     As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the members of the Class have suffered actual damages in the form of the full or partial retail price of Tito's. Had Plaintiff and the Class known that Tito's was produced in mass-quantities in a mechanized process, they would not have purchased the vodka. As such, Plaintiff and members of the Class are entitled to recover actual damages and attorneys' fees pursuant to Texas DTPA § 17.50.

52.     The injuries to Plaintiff and the members of the Class were caused by Defendant's conduct in false and misleading advertising that originated in Texas, including the advertising and marketing materials described above. All of the marketing, advertising, and promotional activities and literature were coordinated at, emanate from, and are developed at Defendant's Texas headquarters. All critical decisions regarding Defendant's marketing and advertising were made in Texas.

53.     Furthermore, most of the misrepresentations and omissions alleged herein were contained on Defendant's website, which is maintained in Texas.

54.     When Plaintiff and the members of the Class purchased Tito's, those payments were processed and the money was sent to Defendant's headquarters in Texas.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Class defined herein;

12

B.    Designating Plaintiff as representative of the Class and his undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.    Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.    Awarding Plaintiff and the Class compensatory damages, in addition to reasonable attorney's fees and costs; and

F.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act
(815 ILCS § 505/1, *et seq.*)
(On behalf of Plaintiff Aliano and Subclass A)**

55.    Plaintiff incorporates by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

56.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, *et seq.*, provides protection to consumers by mandating fair competition in commercial markets for goods and services.

57.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

58.    The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

59.    Defendant is a "person" as defined by section 505/1(c) of the ICFA.

60. The Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA.

61. Tito's constitutes "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

62. Defendant's misrepresentation and omissions regarding the true manufacturing process of Tito's are deceptive and unfair acts or practices prohibited by Chapter 2 of ICFA.

63. Defendant violated the ICFA when it misrepresented and omitted facts regarding Tito's being "handmade" in "small batches" in an "old fashioned pot still" in order to create the impression upon consumers that Tito's was a unique, premium craft vodka.

64. Tito's material selling points are Defendant's misrepresentations that Tito's is a high-quality "handmade" vodka produced in "small batches" from an "old fashioned pot still," and Defendant's omission of the fact that the vodka is actually produced using a large, automated, continuous distillation process. Accordingly, it was the central reason consumers chose to purchase Tito's over other alternatives, and to pay a premium for it, and Defendant intended that customers rely on its misrepresentations and omissions.

65. Plaintiff and members of the Class relied upon Defendant's misrepresentations and omissions when they purchased bottles of Tito's.

66. If Plaintiff and the Class members had been aware of the true process used to produce Defendant's vodka, and the other facts set forth above, they would not have purchased Tito's.

67. As a result of Defendant's material misrepresentations and omissions regarding Tito's, Defendant violated section 510/2(a)(2) of the Uniform Deceptive Trade Practices Act ("DTPA") which proscribes causing a "likelihood of confusion or of misunderstanding as to the

14

source" of goods.

68.     Defendant also violated section 510/2(a)(5) of the DTPA by representing that Tito's has characteristics that it does not have, such as a being produced in low quantities and being made by hand in an old fashioned pot still.

69.     The Plaintiff's and Class's expectations that Tito's was not mass-produced vodka and was made by hand in an old fashioned pot still, were reasonable due to the Defendant's misrepresentations and omissions described herein.

70.     Plaintiff and the Class saw Defendant's marketing and advertising materials prior to purchasing Tito's, and they reasonably relied on Defendant's misrepresentations and omissions when they purchased Tito's.

71.     Defendant's misrepresentations and omissions regarding the manufacturing process of its vodka were acts likely to mislead the Plaintiff and the members of the Class acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of the ICFA.

72.     Defendant knew that it failed to disclose the quantity and manufacturing process of Tito's—which is highly relevant and material information—to its customers, and thus violated the ICFA.

73.     As a direct and proximate result of Defendant's violation of the ICFA, the Plaintiff and the members of the Class have suffered harm in the form of monies paid in exchange for Tito's, because they paid more than what they would have otherwise paid had they known the true nature of the product.

74.     Defendant's practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

15

75.     Plaintiff, on behalf of himself and the Class, seeks an order (1) requiring the Defendant to cease the deceptive and unfair practices described herein; (2) requiring Defendant to change its marketing and advertising materials, including Tito's labels and the Tito's website, to adequately disclose the material facts regarding the process of creating Tito's; (3) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (4) requiring Defendant to restore to Plaintiff and each Subclass member any money acquired by means of unfair competition (restitution).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Class defined herein;

B.      Designating Plaintiff as representative of the Class and his undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.      Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.      Awarding Plaintiff and the Class compensatory damages, in addition to reasonable attorney's fees and costs; and

F.      Granting all such further and other relief as the Court deems just and appropriate.

## COUNT III
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### (815 ILCS 510/1, *et seq.*)
### (On behalf of Plaintiff Due Fratelli and Subclass B)

76.     Plaintiff incorporates by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

16

77.     At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, *et seq*. ("Illinois DTPA").

78.     Section 2 of the Illinois DTPA states in relevant part:

(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person:

...

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

...

(4) uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have....;

...

(9) advertises goods or services with intent not to sell them as advertised;

...

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding

815 ILCS 510/2

79.     Defendant's foregoing misleading statements and omissions to Plaintiff and the Class cause a likelihood of confusion and misunderstanding as to the manufacturing process of Tito's.

80.     Defendant represents that Tito's has characteristics and ingredients that it does not have, such as being of a small batch and that it is handmade in an old fashioned pot still.

81.     Defendant advertises Tito's with the intent not to sell it as advertised by using the false and misleading advertising and marketing detailed above.

82.     The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the sale of Tito's to Plaintiff and members of the Class.

17

83. The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

84. Defendant's false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead Plaintiff and the Class.

85. Accordingly, Defendant has violated the Illinois DTPA.

86. Plaintiff was damaged, as if it does not purchase Tito's for its restaurant, it will suffer damages in the form of lost business from customers who want to drink Tito's. However, if Plaintiff purchases Tito's and serves it to customers, Plaintiff will suffer damages in the form of lost business from customers who object to Plaintiff's sale of Tito's at a premium price when it is not a premium product.

87. As such, Plaintiff is likely to be damaged in the future by Defendant's deceptive and unfair trade practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and its undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff and the Class and against Defendant;

D. Enjoining Defendant's illegal conduct alleged herein;

E. Awarding Plaintiff and the Class reasonable attorney's fees and costs; and

F. Granting all such further and other relief as the Court deems just and appropriate.

18

## COUNT IV
### Restitution/Unjust Enrichment
#### (On behalf of Plaintiffs and the Class)

88.     Plaintiffs incorporate by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

89.     Defendant has acquired and retained money belonging to Plaintiffs and the Class as a result of its wrongful conduct: its false and misleading marketing and advertising campaign for Tito's. Each individual sale nets Defendant profit at the expense of the consumer.

90.     Defendant appreciates or knows of such a benefit.

91.     Under the principles of equity, Defendant should not be allowed to keep the money belonging to Plaintiffs and the members of the Class because Defendant has unjustly received it as a result of its unlawful actions described herein.

92.     Plaintiffs and the Class have suffered damages as a direct result of Defendant's conduct.

93.     Plaintiffs, on behalf of themselves and the Class, seek restitution for Defendant's unlawful conduct, as well as interest and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Class defined herein;

B.     Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiffs and the Class and against Defendant;

D.     Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

19

E.     Awarding Plaintiffs and the Class compensatory damages, in addition to their reasonable attorney's fees and costs; and

F.     Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Plaintiffs MARIO ALIANO and DUE FRATELLI, INC., individually, and on behalf of all others similarly situated,

By: _____

Thomas A. Zimmerman, Jr.
Adam M. Tamburelli
Frank J. Stretz
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
Firm I.D. No. 34418
www.attorneyzim.com

Counsel for the Plaintiffs and Putative Class

20

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| MARIO ALIANO and DUE FRATELLI, INC., <br> individually, and on behalf of all others <br> similarly situated, | ) <br> ) <br> ) <br> ) | 2014CH16201 <br> CALENDAR/ROOM 11 <br> TIME 00:00 |
| Plaintiffs, | ) <br> ) | Class Action |
| v. | ) <br> ) | No. |
| FIFTH DIMENSION, INC., | ) <br> ) <br> ) | |
| Defendant. | ) | |

**MOTION FOR CLASS CERTIFICATION**

NOW COME Plaintiffs MARIO ALIANO and DUE FRATELLI, INC. (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, and, pursuant to 735 ILCS 5/2-801 of the Illinois Code of Civil Procedure, move this Court for an order certifying this action as a class action, as follows:

I.   **INTRODUCTION.**

The Class on behalf of which Plaintiffs seek to maintain this action is defined as follows:

> All persons and entities who purchased a bottle or bottles of Tito's Handmade Vodka ("Tito's").
>
> Subclass A:  all Illinois consumers who purchased a bottle or bottles of Tito's.
>
> Subclass B:  all Illinois businesses that purchased a bottle or bottles of Tito's for business purposes.

Plaintiffs have filed a Class Action Complaint ("Complaint") in the Circuit Court of Cook County, Illinois against Defendant FIFTH DIMENSION, INC., ("Defendant") due to Defendant's violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act

("ICFA"), Illinois Uniform Deceptive Trade Practices Act ("Illinois DTPA"), Texas Deceptive Trade Practices Act ("Texas DTPA"), and unjust enrichment.

Plaintiffs incorporate by reference the allegations in their Complaint in support of this motion.

## II.    LEGAL ARGUMENT.

### A.    Standard for Class Certification.

Class certification is governed by section 2-801 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-801. In order for an action to be maintained as a class action, the movant must demonstrate that: (1) the Class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the Class that predominate over individual questions; (3) the Class Representatives will fairly and adequately protect the interests of the Class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. *Id.* As soon as practicable after the commencement of a class action, a Court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the Class. 735 ILCS 5/2-802(a). The order may be conditional and may be amended before a decision on the merits. *Id.*

The decision to certify a purported Class is within the sound discretion of the trial court. *McCabe v. Burgess*, 75 Ill.2d 457, 464 (1979); *A.G. Farms, Inc. v. American Premier Underwriters, Inc.*, 296 Ill.App.3d 684, 695 (4th Dist. 1998); *see also Schlenz v. Castle*, 84 Ill.2d 196, 203 (1981) (holding that certification by trial court will only be disturbed if there is an abuse of discretion or impermissible application of legal standard). When deciding whether to certify a Class, the Court may consider "any matters of law or fact properly presented by the record including the pleadings, depositions, affidavits, answers to interrogatories and any

evidence that may be adduced at hearings." *Gorden v. Boden*, 224 Ill.App.3d 195, 199 (1st Dist. 1991), quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill.App.3d 84, 100 (5th Dist. 1985); *Brown v. Murphy*, 278 Ill.App.3d 981, 989 (1st Dist. 1996).

A class action is an appropriate method of disposing of a number of relatively small claims. *See Miner v. Gillette Co.*, 87 Ill.2d 7, 8-9 (1981) (reasoning that purpose of class action is to allow a representative party to pursue claims of a large number of persons with like claims). Class actions are an essential and well-accepted way for courts to protect consumers. "In a large and impersonal society, class actions are often the last barricade of consumer protection. Generally, individual plaintiffs cannot, will not and ought not be required to pursue what would often be trivial relief." *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 1004 (1st Dist. 1991). A class action is "an inviting procedural device to cope with frauds causing small damages to large groups.... The alternatives to the class action—private suits or governmental action—have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective." *Id.* (citing omitted).

**B.      Joinder of All Members of the Purported Class Would Be Impracticable.**

Section 2-801(1) of the Code of Civil Procedure, the so called "numerosity requirement," necessitates that the Class be "so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). Very few Illinois cases specifically address the numerosity requirement, but Illinois courts construing the section may follow federal practice under Rule 23(a)(1) (Fed. R. Civ. P. 23(a)(1)) for guidance. *In re Application of Rosewell*, 236 Ill.App.3d 165, 173-74 (1st Dist. 1992), relying on Forde, *State Practice: Illinois Class Action Statute,* in Class Actions ch. 7, § 7.6 (Ill. Inst. for Cont. Legal Educ. (1986)). Purported numbers are not dispositive; rather, the question of numerosity depends upon the particular facts of each case. *Id.*

3

Federal courts have not established a bright line or a minimum number of members to create a Class. *Wood River Area Development Corp. v. Germania Fed. Savings and Loan Ass'n*, 198 Ill.App.3d 445, 450 (5th Dist. 1990). If, however, a putative Class has more than forty people in it, then numerosity is satisfied. *Id.*, *citing* Miller, *An Overview of Federal Class Actions: Past, Present, and Future,* Federal Judicial Center, at 22 (1977); *see also Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (holding 40 members sufficient for class certification); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986) (reasoning where Class numbers at least 40, joinder is generally considered impracticable).

The Court has the ability to make common sense assumptions to find support for numerosity. *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988); *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination…. Where the exact size of the Class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), § 7.22.A.

The fact that Plaintiffs cannot state with specificity the exact number of purported Class members at this time does not defeat the existence of sufficient numerosity, because it is not necessary that Plaintiffs know the precise number of Class members at the outset of the case. Indeed, "Plaintiffs are not required to specify the exact number of Class members so long as a good faith estimate is provided." *McKenzie v. City of Chicago,* 175 F.R.D. 280, 285 (N.D. Ill. 1997), *citing Long v. Thornton Township High School Dist. 205,* 82 F.R.D. 186, 189 (N.D. Ill. 1979). *See Miner,* 87 Ill.2d at 18 (rejecting defendant's arguments on basis that individuals with

potential claims are readily identifiable by examination of defendant's files); *see also In re Rosewell*, 236 Ill.App.3d at 173-73 (affirming trial court's conclusion that joinder of potential Class members was practical because of inherent ease of identifying affected taxpayers in addition to geographic location and size of claims).

Here, 735 ILCS 5/2-801(1) is satisfied, as the Class is so numerous that joinder of all members is impractical. Plaintiffs have alleged that the Class likely consists of thousands of individuals and businesses, and that the Class members can easily be identified through Defendant's records or by other means. *See* Complaint, ¶ 38.

**C.**     **Questions of Law and Fact Common to the Putative Class Predominate Over Any Questions Affecting Only Individual Members.**

Section 2-801(2) requires Plaintiffs to demonstrate that there are questions of law or fact common to the Class that predominate over any questions affecting only individual members. 735 ILCS 5/2-801(2). Illinois has been hospitable to the maintenance of class actions and has been willing to recognize that common questions of law and fact predominate in numerous situations. *Eshaghi*, 214 Ill.App.3d at 1002. As long as there are questions of fact or law common to the Class and these predominate over any other questions affecting only individual members of the Class, then the commonality requirement is satisfied. *Slimack v. Country Life Ins. Co.*, 227 Ill.App.3d 287, 292 (5th Dist. 1992), relying on *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 337-38 (1977); *see also Wenthold v. AT&T Technologies, Inc.*, 142 Ill.App.3d 612, 618 (1st Dist. 1986) (affirming circuit court finding of at least five or six common issues of law or fact). Satisfaction of the requirement pertaining to predominating common questions of fact or law requires a showing that successful adjudication of the purported Class Representatives' individual claims will establish a right of recovery in other Class members. *Scott v. Ambassador Insurance Co.*, 100 Ill.App.3d 184, 187 (1st Dist. 1981).

Once the basic determination has been made that a predominating common question of fact or law exists, the fact that there may also be individual questions will not defeat the predominating common question. *Miner*, 87 Ill.2d at 19. A multitude of state cases reveals that Illinois does not require Class members to have exact and duplicate causes of action to be included as members of a purported Class. *Eshaghi*, 214 Ill.App.3d at 1004. In fact, Class members may have significant differences in their claims, and commonality can still be found. *Id.* Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all Class members. *Miner,* 87 Ill.2d at 17-18; *Kennedy v. Commercial Carriers, Inc.* 294 Ill.App.3d 34, 39 (1st Dist. 1997). Where situations requiring individual determinations exist, however, the Court has authority to establish subclasses with each subclass being treated as a Class under 735 ILCS 5/2-802(b). *Purcell & Wardrobe Chartered v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988); *Wenthold,* 142 Ill.App.3d at 619; *Eshaghi,* 214 Ill.App.3d at 1004; *Steinberg*, 69 Ill.2d at 342.

In this case, there are questions of law and fact common to the Class which predominate over any questions affecting only individual members, in satisfaction of 735 ILCS 5/2-801(2). *See* Complaint, ¶ 39. These questions include, but are not limited to, the following:

a. Whether Defendant misrepresented that Tito's is produced in "small batches;"

b. Whether Defendant misrepresented that Tito's is made by hand;

c. Whether Defendant misrepresented that Tito's is made in an old fashioned pot still;

d. Whether Defendant failed to disclose that Tito's is mass produced;

e. Whether Defendant's conduct violates the Texas Deceptive Trade Practices Act;

6

f.   Whether Defendant's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act;

g.   Whether Defendant's conduct violates the Illinois Uniform Deceptive Trade Practices Act;

h.   Whether Defendant's conduct was fraudulent or misleading; and

i.   Whether Defendant's conduct resulted in unjust enrichment to Defendant.

The questions of law and fact are independent of any individual damage questions for Plaintiffs and each Class member.

**D.   The Proposed Class Representatives Will Fairly and Adequately Represent the Interests of the Class.**

Certification requires a showing that the proposed Class Representatives will fairly and adequately represent the interests of the Class. 735 ILCS 5/2-801(3). Absentee Class members must be so represented that their rights will receive adequate protection. *Steinberg*, 69 Ill.2d at 338. The test applied to determine the adequacy of representation is whether the interests of those who are parties are the same as those who are not joined, and whether the litigating parties fairly represent those not joined. *Newberry Library v. Board of Education*, 387 Ill. 85, 90 (1944); *Miner*, 87 Ill.2d at 14. Additionally, a Class Representative's attorney "must be qualified, experienced and generally able to conduct the proposed litigation." *Steinberg*, 69 Ill.2d at 338-39. Finally, the Class Representative's interest must not appear collusive. *Id.*

The claims of Plaintiffs are typical of the claims of the Class. Plaintiff Aliano, an Illinois resident, purchased Tito's for himself, and separately for and on behalf of his business, Plaintiff Due Fratelli. *See* Complaint, ¶¶ 32-34. Defendant represents Tito' is "handmade" in "small batches in an old fashioned pot still." *See* Complaint, ¶¶ 2-3. In fact, Tito's is mass produced in large floor-to-ceiling stills capable of bottling 500 cases of vodka per hour. *See* Complaint, ¶ 5.

7

Had Plaintiffs and the Class been aware of the Defendant's misrepresentations and omissions, they would not have purchased Tito's. *See Complaint*, ¶ 36.

Plaintiffs and all members of the Class sustained damages. *See Complaint*, ¶ 31. The financial losses of each member of the Class were directly caused by Defendant's misconduct.

Plaintiffs will fairly and adequately protect the interest of the Class, as they are committed to the vigorous prosecution of this action and have retained competent, qualified and experienced counsel able to prosecute the action on behalf of the Class. *See Complaint*, ¶ 40.

**E.     A Class Action Is an Appropriate Method for the Fair and Efficient Adjudication of the Instant Action.**

Section 5/2-801(4) requires that the class action be "an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). In making this determination, a Court must consider whether a class action "(1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill.App.3d at 203; *see also McCabe*, 75 Ill.2d at 468 (holding that federal construction as it relates to economies to be affected through use of class actions should be applied by Illinois courts).

In this case, the class action is an appropriate method for the fair and efficient adjudication of the claims involved, and satisfies 735 ILCS 5/2-801(4). *See Complaint*, ¶ 41. A class action certified by the Circuit Court of Cook County will result in the fair and efficient adjudication of the controversy between the parties based on the identity of issues and common questions, as well as avoiding the filing of numerous repeated and similar individual and class actions.

Moreover, there is no better method than a class action for the adjudication of the relatively small claims that might be bought by each individual Class member. The difficulties sometimes encountered in the management of a class action in the present case are minimal. Each Class member's damages arise from the same identical set of facts and circumstances, to wit: Defendant's violation of the ICFA, Illinois DTPA, Texas DTPA, and Defendant's unjust enrichment at the expense of the Class. The liability issues are identical with regard to each Class member.

The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, which would establish inconsistent adjudications with respect to individual members of the Class. These inconsistent adjudications would, as a practical matter, be dispositive of the other members not parties to the adjudications or which would substantially impair or impede their ability to protect their interests.

## III. CONCLUSION.

The Court should certify the Class, as there is no better method available for the adjudication of the claims of Plaintiffs and the Class. Defendant's wrongdoing was identical with respect to each of the Class members.

Furthermore, the filing of numerous cases against Defendant would be unduly burdensome to the Courts. Judicial efficiency would be greatly promoted by the adjudication of identical claims through a single proceeding.

Therefore, from the perspective of the Court system and the Class members, a class action is a superior means of resolving the issues regarding Defendant's misconduct, especially when compared to individual actions, due to the relatively small amount of damages suffered by each Class member. Allowing this case to proceed as a class action will be an efficient use of

judicial resources and will be superior to individual lawsuits, especially considering the fact that the size of Defendant's business indicates that there is a large number of potential individual plaintiffs.

WHEREFORE, Plaintiffs MARIO ALIANO and DUE FRATELLI, INC., individually, and on behalf of all others similarly situated, pray that the Court enter an order that this action as described may be maintained as a class action pursuant to 735 ILCS 5/2-801, that the Plaintiffs be appointed as the Class Representatives, that Plaintiffs' counsel be designated as Class counsel, that the Court certify the Class as defined above, and for any other relief the Court deems appropriate.

Plaintiffs MARIO ALIANO and DUE FRATELLI, INC., individually, and on behalf of all others similarly situated,

By: _____
    Thomas A. Zimmerman, Jr.
    Adam M. Tamburelli
    Frank J. Stretz
    ZIMMERMAN LAW OFFICES, P.C.
    77 W. Washington Street, Suite 1220
    Chicago, Illinois 60602
    (312) 440-0020 telephone
    (312) 440-4180 facsimile
    Firm I.D. No. 34418
    www.attorneyzim.com

Counsel for the Plaintiffs and Putative Class

10

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIO ALIANO, and DUE FRATELLI, INC.,

Plaintiffs,

v.

FIFTH GENERATION, INC.,

Defendant.

Case No. _____

Honorable _____

## DECLARATION OF KATHERINE WHITE

Katherine White, an employee of Fifth Generation, Inc. states:

1.  I am over eighteen years of age.  Unless stated on information and belief, I have personal knowledge of the facts stated herein or personal knowledge of the relevant business records reflecting those facts.  I am competent to make this Declaration and could testify competently with respect to these facts.

2.  I am currently employed by Fifth Generation, Inc. ("Fifth Generation") as an Accounting and Order Fulfillment Specialist.  I have held this position since December 2013.

3.  Fifth Generation is a Texas Corporation, which has its principal place of business and headquarters in Austin, Texas.

4.  Tito's Handmade Vodka ("Tito's") is distilled and bottled by Fifth Generation. Fifth Generation itself does not make direct sales in Illinois, rather it sells Tito's exclusively to a distributor.  The distributor reports to Fifth Generation the number of accounts it serves in Illinois, and also places orders to serve those accounts.  I have reviewed the Illinois ordering and sales information for Tito's for the past three (3) years received from the distributor.

1

5.     In the 2014 calendar year to date, Fifth Generation's Illinois distributor has sold Tito's to more than 100 accounts in Illinois, which includes sales to retailers, such as supermarkets, liquor stores and specialty stores, as well as to bars and restaurants.

6.     The wholesale price paid to Fifth Generation for Tito's by its Illinois distributor in the two-year period preceding the filing of the complaint in this matter is substantially in excess of $5,000,000.00. This amount reflects the wholesale price, as Fifth Generation does not set the retail prices that consumers pay for Tito's and does not set the prices charged to patrons by bars and restaurants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: December 11, 2014

_Katherine White_
Katherine White